## MARIE L. H. BENOIST *v.* A. G. BLANCHARD.

So far as the creditors of the husband are concerned, the wife must prove the reality of her

BENOIST
v.
BLANCHARD.

dower by other evidence than the acknowledgment of the husband, or a judgment of court rendered between them.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. L. *Grivot* and *L. Janin*, for plaintiff. *Moise* and *Randolph*, for *Nugent, Hopkins & Co.* The judgment of the court was pronounced by

PRESTON, J. The plaintiff and her husband made a marriage contract, by an authentic act, dated the 5th of January, 1839. A community was established according to the laws of the State. The husband brought nothing in marriage. The wife brought in marriage, and constituted her dower, "the capital sum of eight thousand dollars, placed, *in commendam*, in the commercial house of *Bernard Laudumiey*, of this city, as is made manifest by her act of association, *in commendam*, with the house, passed before the notary on the 3d of April, 1837;" also, "the capital sum of ten thousand dollars, placed, *in commendam*, in the commercial house of *Joneau, Metoyer & Co.*, of this city, as is made manifest by her act of association, *in commendam*, with *Antoine Joneau*, passed before *Seghers*, notary, the 24th of May, 1838."

The husband bound himself to collect, take charge of and secure these sums. On the 27th of April, 1839, by a notarial act, he declared, that in pursuance of the clauses in his marriage contract, he had settled with *Laudumiey*, and received from him $9,500, in full of the capital sum of eight thousand dollars, placed, *in commendam*, for account of his wife in the co-partnership formed between her and him, and for her share of the profits of the partnership.

On the 28th of June, 1839, an authentic act of dissolution of partnership was passed between the husband and *Antoine Joneau*, in which he acknowledges to have received, in negotiable drafts, $11,300, the capital and interest placed by his wife, *in commendam*, in partnership with *Joneau*.

In 1842, *Mrs. Blanchard* brought suit against her husband, on account of his embarrassments, for a separation of property, and claimed judgment for the above amounts, and also for $8,000, which she alleged she had inherited, and her husband had received from her father, and for which she produced notarial receipts. *A. G. Blanchard*, the husband, admitted the facts; a judgment for a separation of property was rendered, and also for $31,725, the aggregate amount of the above mentioned claims. An execution was issued and returned unsatisfied.

In 1842, *Nugent, Hopkins & Co.* obtained judgment against *Blanchard* for $1579 90, and, in 1850, issued execution against him and seized a sum of near five hundred dollars due to him by the Second Municipality of New Orleans. They had brought a suit in 1843 against *Blanchard and Wife*, to annul the judgment in her favor against him, on the ground that he had received nothing on her account; that her suit against him was not defended, but that judgment was confessed, which could not have been obtained if the suit had been defended; and that the judgment was rendered to defraud them, being creditors of *Blanchard*, at the time. This suit was put at issue by an answer, but has never been disposed of.

*Nugent, Hopkins & Co.* having seized the debt due by the municipality, *Mrs. Blanchard* also issued an execution and seized it, and then took a rule upon them to show cause why it should not be paid over to her, as a privileged creditor, for her dower. They answered, that the judgment in her favor was confessed, and could, not have been obtained if the suit had been defended; that they had brought suit to annul it; that they were judgment creditors of *Blanchard*, and had seized the money due by the municipality to him.

BENOIST<br>v.<br>BLANCHARD.

The rule was tried and made absolute, by a judgment ordering the money to be paid to *Mrs Blanchard*, in preference to any other creditor. *Nugent, Hopkins & Co.* have appealed.

It has been fully settled by many decisions, that, as to the creditors of the husband, the wife must prove the reality of her dower, and that it was received by the husband, by other evidence than the acknowledgment of the husband or the judgment of the court. 2d Ann. 636. *Dimitry* v. *Pollock*, 5 R. R. 350. Yet the marriage contract and judgment of separation and for the amount of the wife's claims are admissable in evidence, and, if fully corroborated by other evidence, will establish the wife's rights.

The acts in evidence show that eighteen thousand dollars were invested for *Mrs. Blanchard*, before her marriage, in mercantile firms. By the marriage contract it was constituted her dower.

*Laudumiey* proves the payment, very soon after the marriage, of $9,500, in full of the principal and interest invested in the partnership with him. He thinks he paid it to *Mrs. Blanchard's* father; but the partnership was with her, and the account balanced and signed by him on the 31st of March, 1839, was with her and the balance in her favor. Besides, he took a receipt, and none is produced, but a discharge in full, before a notary, signed by the husband the 27th of April, 1839.

The dissolution of the partnership between *Mrs. Blanchard* and *Joneau*, is signed by the attorney in fact of *Joneau* and the husband alone, in less than six months after the marriage. He acknowledges the receipt of negotiable drafts, in payment of that part of his wife's dower invested for her in partnership with *Joneau* before her marriage.

These transactions occurred at a time not suspicious, and before the debt of the defendants in the rule (so far as the record informs us) accrued. They have offered nothing to impeach the reality of these transactions. From them the district judge concluded that the husband had received more of his wife's dower than the amount seized, and in controversy with the defendants in the rule. We are led to the same conclusion by the whole of the evidence.

The code gives the wife a privilege over the defendants in the rule for the restitution of her dowry, art. 2355, and the district court decreed, that she should be paid in preference to them. We think the judgment should be affirmed, with costs, and so decree.

〰〰〰〰〰〰〰

## SAME CASE—ON A RE-HEARING.

Where the wife claims as her dower, by marriage contract, large sums placed by her father in her name, in certain partnerships, *in commendam*, and it appears, from the evidence, that the money was returned by the partnerships to her father and not to her husband, and she fails to show that the money was originally hers, or how she came into possession of it, the transaction will be, as to creditors, regarded as fictitious.

THE judgment of the court, on a re-hearing, was pronounced by

ROST, J. This is a contest between the wife of *Blanchard* and one of his judgment creditors in relation to a credit of $500, seized by the latter as the property of *Blanchard*. *Mrs. Blanchard* claims a privilege upon this credit for the restitution of her dowry.

In April, 1837, when *Mrs. Blanchard* was little over fourteen years of age, her father contracted a partnership, *in commendam,* in her name, with *Bernard Laudumiey,* and put into the firm a sum of $8,000, which he stated belonged to her. The ensuing year he entered into a similar contract in her name, with *Joneau, Metoyer & Co.,* and paid into that firm, ten thousand dollars on her account. There is nothing to show the origin of this money, or that it previously belonged to the daughter, and there is a very strong probability that it did not. In January, 1839, *Mrs. Blanchard* was married, and constituted, herself, these two amounts in dowry by the marriage contract.

On the first of April, 1839, the partnership with *Laudumiey* was dissolved, and it results from the testimony of *Mr. Laudumiey,* that he paid *Mr. Benoist,* the father of the plaintiff, $9,500; it being the amount received from him, *in commendam,* and the profits accruing thereon under the contract of partnership.

On the first of April, 1839, the sum purporting to have been settled as dower, was in the possession of *Benoist,* and there is no evidence it was ever paid by him to *Blanchard.* The acquittance of *Blanchard* to *Laudumiey,* was executed out of the presence of the latter; it has reference to a settlement previously made, and does not state that any money was paid in presence of the notary. Although admissible in evidence, it is insufficient *per se* against creditors, it should be supported by such corroborating circumstances as would exclude all reasonable doubts of its truth. We think that those circumstances are wanting. We are satisfied that the money was originally *Benoist's* money; he could not make his minor child a partner in a commercial firm, and was himself a partner in disguise; at the dissolution of the firm, he received the capital put in and his share of profits, and, under the facts of the case, it is not an unfair presumption that he kept the amount, and that whatever form his liberality to his daughter might assume on the public records, it was not intended to take effect while he lived.

From April, 1839, to March, 1841, there are, in the record, receipts of *Blanchard* to *Laudumiey, Joneau, Metoyer & Co.* and *Benoist,* amounting together to $31,725. On the 21st of April, 1842, he was sued by his wife for a separation of property and acknowledged the full amount claimed. Judgment was rendered against him for it, and the execution issued on that judgment was returned, "no property found."

There is nothing to show the origin of any of the claims of the wife or the losses, which swept from the husband this large sum of money, in so short a time. Upon a renewed and more minute examination of the evidence, the whole affair appears to us a paper case, and has not the requisites of satisfactory judicial proof.

It is not shown that anything was ever made on the drafts, which *Blanchard* acknowledged to have received from *Joneau, Metoyer & Co.* at the dissolution of their partnership; nor does the notary state that the drafts were deliverd in his presence.

We are of opinion, that the judgment should be reversed, the rule discharged, and the seizing creditors allowed to proceed under their execution.

It is therefore ordered, adjudged and decreed, that the judgment rendered by this court be annulled. It is further ordered and decreed, that the judgment of the court below be reversed, the rule discharged, and the seizing creditors allowed to proceed under their execution; the appellees paying the cost of the appeal.